JUDGE ROBERTSON
delivered the opinion oe the court.
On the 10th of February, 1857, John IT. Page and wife, for the consideration of eighty-three thousand three hundred and thirty-three dollars, payable twenty years after date, and twenty several notes, each for five thousand dollars, for interest, payable annually, sold and conveyed by deed to Uriah Porter and others about twenty-one thousand acres of land in Allen County, Kentucky, at the price of fifty thousand dollars; a large number of slaves at the aggregate price of twenty-four thousand two hundred and fifty dollars; and all the stock and implements on the land at the price of nine thousand eighty-three dollars and thirty-five cents — all together making the said aggregate of eighty-three thousand'three hundred and thirty-three dollars; and at the same time he delivered to the purchasers the possession of all the property so sold and conveyed.
The deed contained the following covenants by Page: first, that all the slaves except three were sound; and second, that “he will warrant the property hereby conveyed tohen the principal of the debt aforesaid, and the several notes of five thousand dollars each for interest as aforesaid, are all paid off and fully discharged, hereby retaining a lien on the several tracts of land and the aforesaid several slaves.”
In February, 1868, the appellees, as assignees of one of the interest notes due 1st of January, 1868, brought this action on it. The answer resisted judgment on the plea that the contract was executory and did not pass the title;.that the slaves were emancipated by the General Government on the 18th of December, 1865, whereby the title to them had failed, and Page could not execute his covenant of express warranty of title in 1877, or on payment of the entire consideration; and that consequently *668 to the extent of the price of the slaves, the consideration had failed.
The circuit court sustained a demurrer to the answer, and thereupon rendered judgment for the amount of the note; and the sufficiency of that answer is the only question for revision on this appeal from the judgment.
The deed certainly passed Page’s title to all the property sold and conveyed; and the possession having accompanied the sale, the whole of the property passed absolutely from vendor to vendees; and had the slaves, or any of them, died before emancipation, the loss would undoubtedly have fallen on the purchasers alone. To that extent, and with that effect, the contract was fully executed, and was in no such sense executory or contingent.
The sale itself implied a warranty of title to the slaves and other movable property conveyed. And ■ not only was an express warranty superfluous then, but to make it contingently twenty years or more afterward would be inappropriate, motiveless, and unprecedented in relation to such mutable and perishable things.
We should therefore’ be inclined to construe- such a remote and anomalous covenant as either restricted to the land which required an express warranty, or as intended to mean that the parties, considering Page as then liable -for the title to all the property, therefore provided that the guaranty should not be enforceable against him until the whole of the consideration should be paid,-however remote that payment might happen to be. But, however this may be, an express warranty of title to the perishable movables, to be made twenty or more years after the sale, could not be reasonably presumed to retroact so as to guarantee the title during the whole intermediate time, however long, but should operate only as an assurance of title at the time of the sale.
*669 The implied warranty of title to the slaves imported that at the dating the conveyance Page owned them, and that by the laws of the land they were then slaves for life; and an express general warranty, if then made, would have meant the same, and no more. Hence, there being nothing presumable or credible to the contrary, the warranty of title contemplated by the quoted stipulation, if even applicable to the slaves, would operate just as the like warranty in the deed itself. Consequently, as the persons sold were the property of the vendor, and were then slaves for life, their subsequent emancipation was not, any more than their death, a breach of the warranty of title, and no more entitles the vendees to any exoneration from liability for the price promised for the vendor’s assured right to them when he sold them.
The answer therefore presented no available defense to the action, and the decision of the circuit court was right.
"Wherefore the judgment is affirmed.